## UNION PAC. RY. CO. v. JAMES.

(Circuit Court of Appeals, Eighth Circuit. June 26, 1893.)

### No. 223.

1. EVIDENCE—WEIGHT AND CONCLUSIVENESS—WITHDRAWAL OF QUESTION FROM JURY.

   Where there is positive and direct testimony on one side of an issue, the mere fact that a larger number of witnesses testify positively and directly on the other side is not sufficient to justify the court in determining the issue, and withdrawing it from the consideration of the jury.

2. MASTER AND SERVANT—UNSAFE APPLIANCES — MASTER CHARGED WITH NOTICE.

   An employer who fails to exercise ordinary care in providing reasonably safe appliances is charged with knowledge of any defect therein whereby an employe is injured.

3. APPEAL—HARMLESS ERROR—INSTRUCTIONS.

   In an action against a railway company for personal injuries sustained by a brakeman while coupling cars, when the plaintiff's case, as set forth in the pleadings, rests wholly upon an allegation that the injury was caused by his foot being caught in a frog which had never been properly blocked, an instruction that the issue was whether the frog was blocked at the time of the injury is not reversible error when it appears that the court, in connection with this statement, further instructed the jury that there could be no recovery if the frog had originally been blocked, and had become defective through use or by accident; particularly when defendant's whole evidence and argument attempted to prove that the frog was properly blocked at the time of the injury.

4. SAME—COURT DECIDING QUESTION PROPER FOR JURY.

   In an action for personal injuries against a railway company, brought by a brakeman who claims to have been injured while coupling cars by having his foot crushed while caught in a defective frog, it is not reversible error for the court to assume that the maintaining of such a frog was negligence per se, when defendant has taken no exception thereto, although the question was one which might properly have been submitted to the jury.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

At Law. Action by Granville J. James against the Union Pacific Railway Company for personal injuries. Verdict and judgment were given for plaintiff. Defendant brings error. Affirmed.

John M. Thurston and John N. Baldwin, for plaintiff in error.

Francis A. Brogan, (Harle & McCabe, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. The defendant in error, while in the employ of the Union Pacific Railway Company as a brakeman, sustained an injury to his left foot and leg which necessitated amputation, in consequence of which injury he brought an action against the railway company in the circuit court for the southern district of Iowa, and recovered a verdict in the sum of $7,500. The material allegations contained in his petition or complaint were as follows: That in the discharge of his duty as a brakeman on one of the defend-

ant's freight trains he was required to assist in switching some freight cars from the main track to a side track, at a station called "North Bend," in the state of Nebraska; that in the discharge of such duty it became necessary to go between two cars, for the purpose of coupling them; that at the place where the coupling had to be done, at the junction of the main and side tracks, there was an angle or frog formed by the rails, which, without being blocked, was extremely dangerous, and liable to cause injury to any one who happened to step therein; that at the time the coupling was attempted, it was so dark that it was impossible to see whether the frog was blocked; that at the time the plaintiff entered into the defendant company's service, he was informed by its roadmaster that all of the frogs and angles along the defendant's road were properly filled and blocked; that in point of fact the angle or frog where the coupling was done was not at the time of the accident, and had not been, blocked or filled, and for want of such blocking was in a very dangerous condition; that in consequence thereof, as plaintiff was attempting to couple said cars, his foot became fastened in the angle or frog, so that he could not extricate it, and that by the movement of the train his left foot and leg were mangled and crushed.

The defendant company filed an answer, wherein it admitted that the plaintiff was in its employ as a brakeman, but it denied all of the other allegations of the complaint. It furthermore pleaded that at and prior to the accident plaintiff had acquired full knowledge of the condition of all of the frogs and switches at North Bend, where the accident happened, and with such knowledge remained in the defendant's service, and thereby waived his right to claim compensation in consequence of injuries sustained by reason of any alleged defects in the frogs and switches at that station.

The controversy before the jury appears to have turned mainly on the question whether the frog complained of was blocked at the time of the accident, and whether the want of blocking, as charged in the complaint, caused the injury. The plaintiff produced several witnesses, who testified, in substance, that they examined the frog the morning after the accident occurred, and found that it was not blocked or filled. On the other hand, the defendant produced a greater number of witnesses, who testified, in substance, that they examined the frog, either on the morning succeeding the accident, or a day or two thereafter, and that they found the frog properly blocked and filled.

At the conclusion of all of the evidence, the defendant asked the court to give two instructions, and its refusal to give such requests is assigned for error. The first of these requests, omitting immaterial portions thereof, was as follows:

"In order to entitle the plaintiff to recover, it is not only necessary that he should prove that the frog in question was not blocked, but also that the company had knowledge or notice of the fact, or that the company, by the exercise of ordinary care and diligence, could have known that the frog in question was not blocked. There is no proof whatever in this case proving, or tending to prove, that the company had any notice or knowledge whatever

that the frog in question was not blocked. **On** the contrary, the evidence of the plaintiff tends to show that the frog in question was blocked, but it is claimed that the blocking was insufficient, and had been permitted to become worn. *There is no claim whatever in this case of negligence upon the part of the company in having the frog blocked, and permitting the same to become worn or out of repair. This action is predicated upon the fact that the frog had never been blocked. This being the real status of the case, and there being an entire failure of proof that defendant had any knowledge or notice of such, as is required by law, as to the fact that this frog was not blocked, the plaintiff cannot recover, and you are instructed to return a verdict for the defendant.*"

The second instruction, above referred to, was, in substance, a direction to the jury to find for the defendant company, on the ground that the testimony tending to show that the frog was not blocked at the time of the accident was so completely overcome and overborne by the defendant's testimony to the contrary as to justify the court in determining that issue of fact, and in withdrawing it from the consideration of the jury.

It is hardly necessary to observe that the second of these instructions was properly refused. There was testimony of a positive and direct character that there was no blocking in the frog on the night of the accident, and there was much evidence to the contrary. If the trial court had withdrawn that issue from the jury, on the theory outlined in the instruction, or on any other theory, it would have invaded the province of the jury, and its action would have been clearly indefensible.

We are also of the opinion that the first instruction, above quoted, was properly refused. The concluding paragraph of the instruction, which we have placed in italics, correctly states that under the pleadings in the case the plaintiff below predicated his right to recover on the ground that the frog had never been blocked. He complained of an original faulty construction of the frog, to wit, the failure of the company to insert a block of wood or other material in the sharp angle formed by the junction of the rails, in consequence of which trainmen were liable to have their feet caught in the angle. The complaint contained no averment that the defendant company had suffered and permitted the frog to become and to remain out of repair for such a length of time that notice of the defect might be inferred, but the charge was specific that the frog never had been blocked or filled. While the instruction which was asked correctly construed the pleadings and the issues arising thereunder, yet it assumed (and in this respect it was erroneous) that proof of an original faulty construction of the frog was not sufficient to charge the defendant company with notice of the defect. We think that this position is untenable. Where the defect in an appliance is shown to be structural, and is of such a character as renders it unsafe, it may be inferred that the employer was aware of the defect. It is the master's duty to exercise ordinary care in providing tools, machinery, and appliances that are reasonably safe, and if appliances which have been furnished by the employer or his subagents are shown to have been originally defective and unsafe, the burden does not rest on an employe, when injured by such defect, to produce further evi-

dence that the master had notice thereof. Greenleaf v. Railroad Co., 29 Iowa, 14, 46; Morton v. Railroad Co., 81 Mich. 423, 434, 46 N. W. Rep. 111; Railroad Co. v. Hines, 132 Ill. 161, 168, 23 N. E. Rep. 1021; Village of Jefferson v. Chapman, 127 Ill. 438, 20 N. E. Rep. 33; Ford v. Railroad Co., 110 Mass. 240; Branch v. Railway Co., 35 S. C. 405, 14 S. E. Rep. 808; Railroad Co. v. Herbert, 116 U. S. 642, 646, 6 Sup. Ct. Rep. 590; Shear. & R. Neg. (4th Ed.) § 217. We think, therefore, that no error was committed in refusing the instruction in question.

Alleged errors in the instructions which were given by the court form the next subject of contention. In the course of the charge the court made use of the following language:

"The defendant claims that the frog in question was blocked; that is its contention in the matter. Thus you are narrowed on this issue to the question, was the frog blocked, or was it not blocked, at the time of the injury?"

And, again:

"The question is, was the frog blocked at the time of the injury? If the frog was blocked at the time of the injury, then the plaintiff has not proven his case as his pleadings make it herein, and the defendant is entitled to your verdict. The defendant is not required to prove that the frog was blocked. The burden is upon the plaintiff, and he must prove that it was unblocked."

It is contended by counsel for the plaintiff in error that these portions of the charge limited the jury to a finding which was insufficient to support the verdict, in that it did not require the jury to determine how long the alleged defect in the frog had existed, or whether the defendant had, or ought to have had, knowledge of its condition prior to the accident.

It will be observed that the jury were nowhere instructed that the fact that the frog was not blocked on the night of the accident was in itself sufficient to warrant a verdict in favor of the plaintiff. That is a deduction of counsel, rather than the language of the trial judge. We concede, however, that the foregoing extracts from the charge give some color to the contention of counsel, if they are considered by themselves, without reference to the context, and also without reference to the pleadings or the evidence. But it goes without saying that a mere excerpt from a charge ought not to be wrested from its context, and judged by itself, without reference to other directions which may have been given by the trial court. In determining whether the excerpts in question were prejudicial or otherwise, the charge must be considered as a whole, and in connection with the pleadings and the testimony. It appears from an examination of the record that, in connection with the statements above quoted, the court further instructed the jury, in substance, that the plaintiff did not claim in his petition, and had not attempted to prove, that the frog, although originally well blocked, had been allowed to become defective through use, or that the defect was occasioned by an accidental removal of the blocking. The jury were distinctly told, as we think, that negligence of that kind was neither charged nor proven, and that there could be

no recovery on such grounds. Furthermore, it is shown by the bill of exceptions that both parties tried the case upon the assumption that if the frog was not blocked when the accident happened, then in all probability it never had been blocked, and that the condition of the switch angle, as to blocking, on the night of the accident, was in reality the vital issue to be considered and determined by the jury. No effort appears to have been made by the railway company to show, either by its own witnesses, or by a cross-examination of the plaintiff's witnesses, that the switch angle was originally blocked, and that without fault on its part it had possibly got out of repair. On the contrary, the sole effort of the railway company seems to have been to satisfy the jury, by numerous witnesses, that on the morning succeeding the accident the switch angle was properly filled, that the plaintiff's witnesses had either testified falsely, or were mistaken, and that the injuries complained of could not have been occasioned by any defect in the frog. That such was the attitude of the parties before the jury, and that the case was tried on the assumption last stated, is made manifest by the remarks of the trial judge in overruling the motion for a new trial, which have been incorporated into the record. Speaking of the same objections to the charge which are now urged in this court, he says:

"Neither in the opening statement to the jury, nor in the argument to the jury, after the evidence had closed, did counsel for the defendant lay his case on the line of these requisites. Throughout the trial, the position of defendant was that the frog was blocked at the time of the injury. Both in opening statement and in closing argument defendant's counsel insisted that the frog was blocked at the time of injury. To this defendant's evidence was pointed, and in fact limited, so far as it tended to refute the charge of negligence alleged and attempted to be proven by plaintiff. Defendant did not attempt to escape or avoid, by any showing of sudden tearing out of the frog, whatever force attended plaintiff's evidence as to an unblocked condition of the frog. On neither side was any testimony introduced tending to show any sudden destruction of blocking at this frog, but on either side the contest was as to whether the frog was in fact blocked at the time of the injury. Plaintiff rested his claim, touching the cause of the injury, on the attempt to prove such injury was caused by the frog being unblocked at time of injury, and defendant was equally content, as to evidence introduced, in attempting to prove the frog was then blocked, and defendant's counsel limited his argument to the jury upon the evidence to this same line of defense."

In view of the fact that the case was tried upon the theory that under the pleadings the plaintiff was bound to establish an original faulty construction of the frog, by reason of which it was at the time of the accident, and always had been, dangerous, and in view of the fact that the jury were, in effect, instructed that there could be no recovery by the plaintiff except on the precise ground stated in his petition, we fail to see how the expressions complained of in the charge could have done any harm. It is obvious, we think, that the jury must have understood, from the whole tenor of the instructions, that the plaintiff was not entitled to a verdict, unless, as charged in the complaint,

the alleged defect in the frog was due to its original construction, and was not occasioned by long-continued use, or by an accidental removal of the blocking. At all events, if the plaintiff in error desired a more specific instruction, to the effect that the jury must be satisfied, not only that the frog was not blocked on the night of the accident, but that it never had been blocked or filled prior thereto, then it was its duty to have asked for such an instruction, which it failed to do. On the contrary, its insistence at the trial seems to have been that, even though the frog was not blocked, and never had been, it was not liable for the injury complained of, unless it had actual or constructive notice of the defect, and that the onus was on the plaintiff to show such notice. As we have already held, this view of the law was and is erroneous.

It is further contended that the court erred in assuming that an unblocked switch angle or frog is a dangerous and unsafe appliance. With reference to this contention, it is only necessary to say that, as no exception was taken to the action of the trial court in charging the jury that an unfilled switch angle was a dangerous contrivance, we cannot notice the alleged error. The plaintiff offered some testimony tending to show that without being blocked switch frogs are unsafe, and are liable to occasion injuries. We think that it might properly have been left to the jury to determine whether the maintenance of an unblocked frog at the time and place of the accident was an act of culpable negligence, but as the court was not requested to submit that issue to the jury, and as no exception was taken to the action of the court in deciding that the maintenance of such a switch was per se a negligent act, no error was committed which can be noticed by this court. It follows that, as none of the assignments of error appear to be tenable, the judgment of the circuit court must be affirmed.