REBILLARD v. MINNEAPOLIS, ST. P. & S. S. M. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   July 27, 1914.)

No. 4173.

**1. APPEAL AND ERROR (§ 695*)—REVIEW OF EVIDENCE—PARTIAL RECORD.**

On a question of fact an appellate court cannot have the entire record before it, where the trial court and jury made an inspection of the premises where an accident occurred.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2911–2914;  Dec. Dig. § 695.*]

**2. NEGLIGENCE (§ 93*)—IMPUTED NEGLIGENCE—INJURY TO PASSENGER IN AUTOMOBILE.**

Plaintiff was riding with others as a guest in an automobile at night. The lights gave out, and they stopped at a town, but could procure no light, except an oil lamp, which was very dim.   After traveling several miles, while they were on a trail not used or treated as a public road, and with which none of those in the car was acquainted, the machine went over an embankment into a cut made by defendant railroad company, and plaintiff was injured.   The place was within the limits of a city, but in a part which had not been platted, nor streets or alleys dedicated.   *Held* that, aside from the question of defendant's negligence, plaintiff was chargeable with contributory negligence and could not recover.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 147–150;  Dec. Dig. § 93.*]

**3. NEGLIGENCE (§ 93*)—NEGLIGENCE OF DRIVER OF VEHICLE IMPUTABLE TO PASSENGER.**

The rule that the negligence of the driver of a conveyance will not be imputed to a passenger, whether the conveyance is a public one or the passenger is the guest of the driver of a vehicle, does not apply where the passenger has full knowledge of the danger and voluntarily incurs the risk.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 147–150;  Dec. Dig. § 93.*]

In Error to the District Court of the United States for the District of North Dakota;  Charles F. Amidon, Judge.

Action at law by Charles Rebillard against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company.   Judgment for defendant, and plaintiff brings error.   Affirmed.

C. J. Murphy, of Grand Forks, N. D. (Murphy & Toner, of Grand Forks, N. D., and William M. Anderson, of Devil's Lake, N. D., on the brief), for plaintiff in error.

Fred J. Traynor, of Devil's Lake, N. D. (Flynn & Traynor and P. J. McClory, all of Devil's Lake, N. D., and John L. Erdall and A. H. Bright, both of Minneapolis, Minn., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

TRIEBER, District Judge. This is an action for personal injuries sustained by the plaintiff below, who is the plaintiff in error, and will be referred to herein as the plaintiff, caused by an automobile, in which he was riding as a guest with a friend, running over an embankment into a deep cut made by the defendant in the construction of its road, and which was unguarded.

The allegations in the complaint are that the defendant constructed a line of railway through the city of Devil's Lake, N. D., which intersected a public highway located west of said city; that in building the railroad a cut 19 feet in depth at the point of intersection with the highway was made; that the cut was not bridged over, nor guarded in any way, so as to warn travelers upon the highway of the dangerous situation there existing; that on April 26, 1913, at 11:45 p. m. while plaintiff was riding as a guest in the rear seat of an automobile driven by the owner of the car over the said highway, the car was driven over the embankment into the cut, thereby injuring plaintiff.

The answer is a general denial, and also pleads contributory negligence on the part of the plaintiff. At the conclusion of the evidence the court gave a peremptory instruction in favor of the defendant.

The evidence introduced on the part of the plaintiff tended to show that one Doyon, who was the owner of an automobile, had invited the plaintiff to take a trip in his car, plaintiff bing associated with him in the mercantile business at Doyon, N. D.; that at Church's Ferry they picked up two additional guests, Mr. McLean, who was sheriff of that county, and Mr. Chambers, a newspaper man and postmaster at Church's Ferry. They left Church's Ferry about 8 o'clock shortly before dark; the car was provided with a prest-o-lite tank for lighting purposes; when about 8 or 9 miles from Church's Ferry the gas gave out; there was an oil lamp on the dash of the car, but neither wick nor oil in it; they proceeded in the dark about two miles to Grand Harbor, where they tried to get a prest-o-lite gas tank, or an ordinary lantern, but failed; they procured some kerosene and a wick there, but the latter was too large for the lamp on the car, and it was trimmed down so as to make it do, but the light afforded by the lamp was very dim; they then proceeded on their journey to Devil's Lake, which was about 6 miles. Mr. McLean was the only person who was at all familiar with the roads in that section, but he had not been over this road for some time, and not since the defendant built its line and made the cut, several months before the accident occurred. They traveled over what seemed to be a prairie trail on the section lines, grown over with grass and weeds, and which had never been treated as a public road, nor as a street or alley of the city of Devil's Lake, within whose corporate limits it was, and where the accident occurred, and was but little traveled. Mr. McLean was standing on the running board of the car for the purpose of keeping a lookout, while the plaintiff and Mr. Chambers were sitting on the back seat of the car. Shortly before reaching the place of the accident they got off the trail, which was very indistinct. They

then tried to get back on the trail, but a large rock was in the way, which caused them to turn toward the section line, and in attempting to get back to the trail the car went over the embankment. The cut does not cross the trail at right angles, but a little "biased." It is undisputed that, had the car been supplied with proper lights, the party would not have taken this trail, but would have used the public road, which would have enabled them to avoid this cut, or, if on the trail, the cut could have been seen in time to avoid the accident.

Section 2171, North Dakota Rev. Code, prescribes:

"Every automobile or motorcycle shall also be provided with lights, the automobile to carry not less than two lights in front of such machine, one of which to be on either side."

The evidence is undisputed that the trail was not treated or used as a public road, nor, being within the limits of a city, as a street or alley. It was a part of the city which had never been platted, nor any streets or alleys dedicated. It is claimed on behalf of the plaintiff that the trail, being on the section lines, was under the provisions of section 2477, R. S. U. S. (U. S. Comp. St. 1901, p. 1567), and by reason of the acceptance of the grant of this strip as a public road by the territory of Dakota in 1877, a public road, and therefore it was the duty of the railway company to guard the cut at the intersection of this road. Several decisions of the Supreme Courts of South and North Dakota are cited to that point, but an examination of them shows that they are not in point, as all they decided was that the owner of the lands bordering on section lines takes them subject to the easement of the county and state to use them as public roads or streets, whenever they see proper to do so, a privilege which had never been exercised by either the city, county, or state in this case.

But it is claimed on behalf of the plaintiff, quoting from the brief, that:

"There was at least a road established by user which the defendant had no right to obstruct. This trail had been used for many years, and the defendant, in utter disregard of the safety of travelers excavated a cut 30 feet wide and about 15 feet deep through the road without so much as putting up a warning signal. Even if the users of the road were mere licensees, the defendant owed them the duty of warning them by building a barrier, placing signal lights or in some other manner. The conditions were such as to advise defendant of the long use of this road for highway purposes, and it was bound to know that travelers might continue to use this road, and that it might, under conditions such as existed on the night in question, become a veritable deathtrap. This was the defendant's duty under the general law as to licensees, and neglect of that duty would render it liable to any person injured without contributing fault."

[1] The evidence, as to whether the trail indicated that it was used to any appreciable extent as a public road, is conflicting, but the record shows that during the trial the jury and trial judge, by consent of all parties, made an ocular inspection of the place, where the accident occurred. What that inspection conveyed to the minds of the court we cannot know from the record; in such case the appellate court cannot have the entire record before it. Choctaw, etc.,

R. R. Co. v. Holloway, 114 Fed. 458, 52 C. C. A. 260, affirmed 191 U. S. 334, 24 Sup. Ct. 102, 48 L. Ed. 207.

[2] Assuming that the above statement of the law made by counsel for plaintiff to be correct, the question arises whether the accident which caused plaintiff's injuries occured "without contributing fault on his part." It is undisputed that the car on that occasion was not provided with lights as required by the laws of North Dakota, and even in the absence of such a statute no reasonably prudent person would, on a dark night, on a road with which he was unfamiliar, travel in a motor car without sufficient lights to enable him to see whether there were any dangerous places along the road of travel, especially when going to a city known to him to have several railroads whose tracks would have to be crossed. All the evidence tends to show that had the car been supplied with proper lights this road would not have been used by the party, and if used the cut would have been seen in time to have avoided it. This clearly was such negligence as to prevent a recovery on the part of those in charge of the car.

[3] But it is claimed, and that is the main ground upon which a reversal of this cause is asked, that as the plaintiff was merely a guest of the owner and driver of the car, and exercised no control over the driver, the driver's negligence is not attributable to him.

In Little v. Hacket, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652, which is the leading American case on this subject, and which has been followed by the American courts generally, the rule was established that the contributory negligence of the driver of a public conveyance would not be imputed to a passenger. And this court in Union Pacific Ry. Co. v. Lapsley, 51 Fed. 174, 2 C. C. A. 149, 16 L. R. A. 800, and City of Winona v. Botzet, 169 Fed. 321, 94 C. C. A. 563, 23 L. R. A. (N. S.) 204, has extended this rule to a person who accepts a gratuitous invitation of the owner and driver of a vehicle to ride with him, even if it is not a public conveyance. But an examination of the many cases on that question shows that the writers of the opinions are careful to except a passenger or guest who with knowledge of the danger remains in such dangerous position. Dyer v. Erie Ry. Co., 71 N. Y. 228; Brickell v. N. Y. C. & H. R. R. Co., 120 N. Y. 290, 294, 24 N. E. 449, 17 Am. St. Rep. 648; Transfer Co. v. Kelley, 36 Ohio, 86, 91, 38 Am. Rep. 558; Wabash, etc., Ry. Co. v. Shacket, 105 Ill. 364, 44 Am. Rep. 791; Davis v. C., R. I. & P. Ry. Co., 159 Fed. 10, 19, 88 C. C. A. 488, 497, 16 L. R. A. (N. S.) 424; Brommer v. Pennsylvania Ry. Co., 179 Fed. 577, 581, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924; Dean v. Pennsylvania R. R. Co., 129 Pa. 524, 18 Atl. 718, 6 L. R. A. 143, 15 Am. St. Rep. 733.

In Davis v. C., R. I. & P. Ry. Co., supra, this court quoted with approval the following extract from Brickell v. N. Y. C. & H. R. R. Co., supra:

"The rule that the driver's negligence may not be imputed to the plaintiff should have no application to this case. Such rule is only applicable to cases where the relation of master and servant or principal and agent does not exist,

or where the passenger is seated away from the driver by an enclosure, and is without opportunity to discover danger and to inform the driver of it. It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver to learn of danger, and avoid it if practicable."

The same rule is laid down in Shultz v. Old Colony Street Ry. Co., 193 Mass. 323, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402; Partridge v. Boston & M. Ry. Co., 184 Fed. 219, 107 C. C. A. 49.

The plaintiff, as a reasonably prudent person, must have known of the danger incident to riding in a motor car on a dark night, without lights, over roads with which neither the driver of the car, nor any of the persons with him in the car, were familiar. When with full knowledge of that fact the plaintiff remained in the car he was as guilty of negligence as the driver himself. As stated by Judge Philips in the Davis Case:

"The law of common sense applied to such a situation is that the movement and control of the vehicle is as much under the direction and control of one as of the other."

The action of the court in directing a verdict in favor of the defendant was right, and the judgment is accordingly affirmed.